# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| KELLEY GILBERT, | § |
| | § |
|    Plaintiff, | § |
| | § |
| v. | §    CIVIL ACTION NO. 3:14-CV-3806-B |
| | § |
| BIG BROTHERS BIG SISTERS OF | § |
| AMERICA, INC., | § |
| | § |
|    Defendant. | § |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Big Brothers Big Sisters of America, Inc.'s (BBBSA) Motion for Summary Judgment. Doc. 61.[1] For the reasons that follow, the Court **GRANTS** BBBSA's Motion.

## I.

## BACKGROUND[2]

This is a race-based employment discrimination case. In 2014, Defendant employer BBBSA faced a "near-devastating financial situation." Doc. 62, Def.'s Br. in Supp. of Def.'s Mot. Summ. J. 2 [hereinafter Def.'s Br.]. In March of that year, Pam Iorio joined BBBSA as CEO. Doc. 1, Pl.'s Compl. ¶ 11; Doc. 62, Def.'s Br. 2. Following her arrival, there was at least one major reduction in

---

[1] BBBSA's Motion for Summary Judgment addresses both Plaintiff Kelley Gilbert and former Plaintiff Erick C. Brown. Plaintiff Brown, however, has since dismissed his claims with prejudice and was terminated as a party. Doc. 75, Order. Therefore, the Court considers BBBSA's Motion as if it was made against only Plaintiff Gilbert.

[2] The Court takes its factual account from Gilbert's Complaint as well as the uncontested facts contained in the summary judgment record. Any contested fact is identified as the allegation of a particular party.

the workforce (RIF). Doc. 1, Pl.'s Compl. ¶ 13; Doc. 62, Def.'s Br. 9. The total amount of employees let go and how many of those employees were minorities is disputed by the parties. *Compare* Doc. 1, Pl.'s Compl. ¶¶ 13–16 (asserting that of 45 total employees working, BBBSA terminated 14 minority employees and 7 Caucasian employees) *with* Doc. 62, Def.'s Br. 21 (asserting that of 64 total employees working, BBBSA terminated 14 minority employees and 17 Caucasian employees).

After Iorio was appointed CEO, she fired the former general counsel and allegedly made the decision to replace the position with *pro bono* counsel. Doc. 62, Def.'s Br. 2. To fill the position until she found *pro bono* counsel, BBBSA asserts, Iorio installed Plaintiff Kelley Gilbert as the Interim General Counsel, a title Gilbert does not dispute. *Id.*; Doc. 1, Pl.'s Compl. ¶ 18. Prior to filling the role of Interim General Counsel, Gilbert was the Assistant General Counsel & Associate Vice President of Government Relations. Doc. 1, Pl.'s Compl. ¶¶ 9, 18; Doc. 62, Def.'s Br. 10–11.

By June 2014, Iorio retained two national law firms to provide *pro bono* legal services. Doc. 62, Def.'s Br. 11. As a result, Gilbert's position of Interim General Counsel was eliminated and her employment was terminated. *Id.* In her Complaint, Gilbert states that she knew Iorio sought General Counsel in the Dallas area. Doc. 1, Pl.'s Compl. ¶ 18. Gilbert notes that Iorio fired her without ever inquiring about Gilbert's willingness to relocate to Dallas, Texas or providing Gilbert an opportunity to apply for the General Counsel position. *Id.* ¶¶ 18–19.

After her employment was terminated, Gilbert brought a race discrimination claim under 42 U.S.C. § 1981. *Id.* ¶ 23. Gilbert reasons that BBBSA's termination of her employment was a result of discrimination based on her race. *Id.* In her Complaint, Gilbert asserts that after Iorio's arrival, Iorio allegedly decided to shift the focus of BBBSA away from serving ethnic minorities and therefore, BBBSA "purged its workforce of ethnic minorities." *Id.* ¶ 24. Gilbert appears to have

abandoned this particular theory, though, in responding to BBBSA's Motion for Summary Judgment. In her Response, Gilbert's discrimination theory is based solely on the number of minorities terminated during the RIF. *See* Doc. 65, Pl.'s Resp. 6–7.

BBBSA filed a Motion for Summary Judgment (Doc. 61) seeking to dismiss Gilbert's sole claim—a violation of 42 U.S.C. § 1981. Gilbert has responded to BBBSA's Motion, and BBBSA has replied. *See* Doc. 65, Mem. of Law in Supp. of Pl.'s Opp. to Def.'s Mot. Summ. J. [hereinafter Pl.'s Resp.]; Doc. 68, Reply Br. in Further Supp. of Def.'s Mot. Summ. J. [hereinafter Def.'s Reply]. Thus, BBBSA's Motion is ripe for the Court's review.

## II.

## LEGAL STANDARD

*A.    Summary Judgment*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." *Burrell v. Dr. Pepper/Seven Up Bottling Grp.*, 482 F.3d 408, 411 (5th Cir. 2007). And a fact "is 'material' if its resolution could affect the outcome of the action." *Id.*

The summary judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. Smithkline & French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990). Usually, this requires the movant to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). But if the non-movant ultimately bears the burden of proof at

trial, the movant may satisfy its burden just by pointing to the absence of evidence supporting the non-movant's case. *Id.* at 322–23.

If the movant meets that burden, then it falls to the non-movant to "show with significant probative evidence that there exists a genuine issue of material fact." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (internal quotation marks omitted) (citing *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)). And significant probative evidence is just that: significant. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam). "[M]etaphysical doubt as to material facts," "conclusory allegations," "unsubstantiated assertions," or a mere "scintilla of evidence" will not do. *Id.* (internal citations and quotation marks omitted). Rather, "the non-movant must go beyond the pleadings and present specific facts indicating a genuine issue for trial." *Bluebonnet Hotel Ventures, L.L.C. v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014) (citing *Celotex*, 477 U.S. at 324).

To be sure, the court views evidence in the light most favorable to the non-movant when determining whether a genuine issue exists. *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000). Yet it need not "sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)). Simply put, the non-movant must "identify specific evidence in the record" and "articulate the precise manner in which that evidence supports [its] claim." *Id.* If it cannot, then the court must grant summary judgment. *Little*, 37 F.3d at 1076.

B.    *The McDonnell Douglas Burden Shifting Framework*

As referenced, Gilbert asserted her race discrimination claim under 42 U.S.C. § 1981.

"Section 1981 is a federal law designed to ensure that all persons in the United States have the 'same right[s]' and, *inter alia*, 'the full and equal benefit of all laws . . . as is enjoyed by white citizens.'" *Finley v. Fl. Par. Juvenile Det. Ctr.*, 574 F. App'x 402, 404 (5th Cir. 2014) (quoting 42 U.S.C. § 1981(a)). "Claims of racial discrimination brought under § 1981 are governed by the same evidentiary framework applicable to claims of employment discrimination brought under Title VII." *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n.2 (5th Cir. 1996). On that basis, the Court will address Gilbert's claim using the Title VII evidentiary framework. *See Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010). A plaintiff may establish his prima facie case of discrimination using circumstantial evidence.[3] *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005) (citing *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). If a plaintiff uses circumstantial evidence, as Gilbert does, then the *McDonnell Douglas* framework applies. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)

To survive summary judgment, a Title VII plaintiff, or a § 1981 plaintiff, must first establish a "prima facie case of discrimination by a preponderance of the evidence." *LaPierre*, 86 F.3d at 448 (citing *McDonnell Douglas*, 411 U.S. at 802). "'Although the precise elements of this showing will vary depending on the circumstances, the plaintiff's burden at this stage of the case is not onerous.'" *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012) (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012)).

Second, if the plaintiff shows a prima facie case, then "the 'burden shifts to the employer to show a legitimate, nonretaliatory reason for the adverse employment action.'" *Reed*, 701 F.3d at 439

---

[3] Gilbert makes no indication that she bases her claims on direct evidence of race discrimination, nor can the Court locate any such evidence relied upon in the record.

(quoting *Black v. Pan Am. Labs., L.L.C.*, 646 F.3d 254, 259 (5th Cir. 2011)). "The employer's burden is one of production, not persuasion, and does not involve a credibility assessment." *Black*, 646 F.3d at 259. Third, "[i]f the employer meets its burden, then the burden shifts back to the plaintiff to make an ultimate showing of intentional discrimination." *Reed*, 701 F.3d at 439.

To be sure, the three-step *McDonnel Douglas* framework shifts the "intermediate evidentiary burdens . . . back and forth" between the plaintiff and defendant. *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010). But at bottom, "'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).

## III.

## ANALYSIS

A.   *Prima Facie Case*

To establish a prima facie case of racial discrimination, Gilbert must provide evidence that she: (1) "is a member of a protected class"; (2) "was qualified for the position at issue"; (3) "was the subject of an adverse employment action"; and (4) "was treated less favorably than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances."[4] *Bender v. Shulkin*, 3:14-cv-2595-L, 2017 WL 1156327, at *7 (N.D. Tex. Mar. 23,

---

[4] Below, Gilbert puts forth statistical evidence of the RIF conducted by BBBSA. It seemingly appears, then, that this is a RIF discrimination case. In a RIF discrimination case, a plaintiff must establish the following elements to make a prima face case: (1) she is a member of a protected class; (2) she was adversely affected by the employer's decision; (3) she was qualified to assume another position; and (4) others who were not members of the protected class remained in similar positions. *Lowery v. Allstate Texas Lloyds, Inc.*, No. 3:06-cv-1886-L, 2007 WL 4208476, at *8 (N.D. Tex. Nov. 29, 2007). But the parties agree that Gilbert was not terminated through an RIF. *See* Doc. 62, Def.'s Br. 20; Doc. 63, Def.'s App. 49–50, Gilbert Dep. Even though her employment was terminated during a similar time frame as the RIF, her termination was individual and separate. *See* Doc. 63, Def.'s App. 50, Gilbert Dep. Accordingly, the Court finds it appropriate to analyze

2017) (quoting *Paske v. Fitzgerald*, 785 F.3d 977, 985 (5th Cir. 2015)).

The parties focus their arguments exclusively on the fourth element—whether Gilbert was treated less favorably than were other similarly situated employees. *See* Doc. 62, Def.'s Br. 19–25; Doc. 65, Pl.'s Resp. 6–7. Therefore, the Court will assume, without deciding, that Gilbert has established the first three elements of her prima facie case.

To support her contention that she was treated less favorably than similarly situated employees who were not members of her protected class, Gilbert produces statistical evidence. Gilbert asserts that of 45 total employees, 14 minority employees were terminated and only 7 Caucasian employees were terminated. Doc. 65, Pl.'s Resp. 6. While BBBSA asserts that there were two separate RIFs, Gilbert appears either to consider only the first or consider both RIFs together. Gilbert concludes that after the RIF, an office that was once half minority employees dropped to about a third. *Id.* Gilbert cites to her own Complaint and Deposition to support her numbers. *See id.* It appears that Gilbert reasons that because BBBSA allegedly fired more minority employees than Caucasian employees, it treated minority employees less favorably than Caucasian employees. Therefore, Gilbert's own termination was likely rooted in the same apparent discrimination.

BBBSA argues that Gilbert's statistics are unreliable. Doc. 62, Def.'s Mot. 20–21.[5] First, BBBSA points out that the statistics concerning BBBSA's reduction in force are not relevant to

---

the case not as a RIF discrimination case, but rather as a disparate treatment case.

[5] BBBSA also makes arguments concerning Gilbert's contention that Iorio intended to shift the focus of BBBSA away from serving minority communities. Doc. 62, Def.'s Mot. 20–25. But Gilbert appears to abandon this line of reasoning in her Response as she relies solely on the statistical evidence to support her prima facie case. *See* Doc. 65, Pl.'s Resp. 6–7. Therefore, the Court will consider only Gilbert's statistical argument as well.

Gilbert's claim because she was not selected as a part of those reductions. *Id.* at 20. Her employment was terminated separately. Furthermore, BBBSA argues that the statistics to which Gilbert cites are inaccurate. *Id.* at 21. To support this claim, BBBSA points to an October 28, 2014, RIP Analysis and a Statistical Analysis Chart that indicate BBBSA employed 64 employees before the April 2014 RIF—not 45—and ultimately laid off more Caucasian employees than employees who were racial minorities. *Id.*

When proving a prima facie case, a plaintiff may rely on the use of statistics if a "gross" disparity in the treatment of workers based on race is shown. *Anderson v. Douglas & Lomason Co., Inc.*, 26 F.3d 1277, 1285 (5th Cir. 1994) (quoting *Carroll v. Sears Roebuck & Co.*, 708 F.2d 183, 190 (5th Cir. 1983)). Plaintiffs are cautioned, though, that "statistics are not irrefutable; they come in infinite variety and, like any other kind of evidence, they may be rebutted. In short, their usefulness depends on all of the surrounding facts and circumstances." *Int'l Bhd. of Teamsters v. U.S.*, 431 U.S. 324, 339–40 (1977). Employers may rebut a plaintiff's prima facie case by "introducing proof that plaintiffs' statistics are 'inaccurate or insignificant' or by providing a 'non-discriminatory explanation for the apparently discriminatory result.'" *Anderson*, 26 F.3d at 1285 (quoting *Bernard v. Gulf Oil Corp.*, 841 F.2d 547, 568 (5th Cir. 1988)).

The Court sees some problems with Gilbert's arguments. For example, usually when a plaintiff puts forth statistical evidence of a RIF to show disparate treatment, that plaintiff was included in the RIF. *See, e.g.*, *Quintana v. Fujifilm N. Am. Corp.*, 96 F. Supp. 3d 601, 616 (N.D. Tex. 2015); *Chavarria v. Despachos Del Norte, Inc.*, 390 F. Supp. 2d 591, 599–600 (S.D. Tex. 2005). Here, Gilbert's termination was not part of BBBSA's RIF. Even though Gilbert was terminated around the same time that BBBSA was making the RIF, her termination was separate and it is unclear how

statistical evidence of the RIF is relevant to Gilbert. The Court, however, need not spend time considering these issues in depth because Gilbert ultimately fails to put forth evidence rebutting BBBSA's non-discriminatory reason for terminating her employment. Therefore, the Court will assume, without deciding, that Gilbert established her prima facie case.

B.      *Legitimate, Nondiscriminatory Reason*

The Court now considers whether BBBSA can show a legitimate, nonretaliatory reason for terminating Gilbert's employment. *See Reed*, 701 F.3d at 439. "The employer's burden is one of production, not persuasion, and does not involve a credibility assessment." *Black*, 646 F.3d at 259. BBBSA provides that its legitimate, nonretaliatory reason for firing Gilbert was financial. Doc. 62, Def.'s Br. 25. More specifically, because BBBSA faced serious financial constraints, it chose to eliminate Gilbert's position of Interim General Counsel and replace it with a national law firm willing to do *pro bono* work free-of-charge.[6] *Id.* As evidence, BBBSA relies on: (1) Iorio's Declaration; (2) Iorio's Deposition; (3) Gilbert's Deposition; and (4) Gilbert's Responses to BBBSA's First Set of Interrogatories. *Id.* at 11–12, 25.

The summary judgment evidence shows, and Gilbert does not dispute, that BBBSA was in a "dire" financial position. Doc. 63, Def.'s App. 17, Iorio Decl.; Doc. 63, Def.'s App. 44, 48, Gilbert Dep.[7] It goes on to show that after being hired as CEO in March 2014, Iorio appointed Gilbert to

---

[6] It is somewhat unclear whether BBBSA paid any fee to the national law firms that did *pro bono* work. From BBBSA's brief, it represents that the work was done free-of-charge. Doc. 62, Def.'s Br. 25. But in Iorio's Deposition, she states that she offered to pay $10,000 a month to cover copying expenses and travel. Doc. 63, Def.'s App. 57, Iorio Dep. Because Gilbert ultimately fails to rebut BBBSA's nondiscriminatory reason, the Court need not resolve this discrepancy.

[7] To clarify, when citing to BBBSA's Appendix, the Court cites to the page in the appendix. When citing to Gilbert's Appendix, the Court cites to the page in the specific document to which the Court refers.

Interim General Counsel, but intended to retain *pro bono* services of a national law firm to ultimately serve in the capacity of General Counsel. Doc. 63, Def.'s App. 17, Iorio Decl.; Doc. 63, Def.'s App. 51, Gilbert Dep. The summary judgment record also demonstrates that by June 2014, Iorio retained *pro bono* counsel, so she eliminated Gilbert's role as Interim General Counsel. Doc. 63, Def.'s App. 17–18, Iorio Decl.; Doc. 63 Def.'s App. 51, Gilbert Dep. As a result of retaining *pro bono* legal counsel, the summary judgment record indicates that BBBSA was able to obtain extensive legal services, worth millions of dollars, from national law firms. Doc. 63, Def.'s App. 18, Iorio Decl. In Iorio's Deposition, she guessed that the bill from the law firm retained in June 2014 was approaching a million dollars in legal services. Doc. 63, Def.'s App. 58, Iorio Dep. And thus, Gilbert's services were redundant.

The Court concludes that BBBSA has satisfied its burden of producing evidence of a legitimate, nondiscriminatory reason for its decision to terminate Gilbert in that BBBSA was in a financially dire position and eliminating Gilbert's position, and her employment, to retain *pro bono* counsel was for financial reasons. *See Reed v. Efficient Networks, Inc.*, No. 3:02-cv-1255-P, 2004 WL 1717369, at *14 (N.D. Tex. July 30, 2004) (finding that the defendant's claim that the plaintiff's termination stemmed from the elimination of his project as a result of an economic downturn was a legitimate, nondiscriminatory reason); *Sarpy v. Town of Homer*, 284 F. App'x 165, 167 (5th Cir. 2008) (finding that a city's "need to reduce the workforce in order to manage its financial difficulties was a legitimate, nondiscriminatory rationale" for terminating an employee).

C.     *Pretext*

"As [BBBSA] has met its burden of production, 'the presumption of discrimination drops out of the picture, and [Gilbert] must offer some evidence that the reason proffered was a pretext for

discrimination, or that a motivating factor for the employment decision was'" Gilbert's race. *Bender*, 2017 WL 1156327, at *9 (quoting *Rogers v. Pearland Ind. Sch. Dist.*, 827 F.3d 403, 408 (5th Cir. 2016)). Gilbert appears to attack BBBSA's rationale—that Gilbert's termination was due to financial reasons—under only a pretext theory.

Gilbert is also subject to the "same actor inference." *See Spears v. Patterson UTI Drilling Co.*, 337 F. App'x 416, 421–22 (5th Cir. 2009).[8] The same actor inference "creates a presumption that animus was not present where the same actor responsible for the adverse employment action either hired or promoted the employee at issue." *Id.* at 421–22. This is because "a discriminatory animus that exists in termination but not in hiring seems irrational." *Jones v. R.G. Barry Corp.*, No. 16-cv-154, 2017 WL 1049566, at *9 (W.D. Tex. Mar. 17, 2017) (citing *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996), *abrogated on other grounds by Reeves*, 530 U.S. at 134 (finding that the plaintiff failed to meet his evidentiary burden on the issue of pretext when the facts were not sufficiently egregious to overcome the inference that the employer's proffered nondiscriminatory rationale was not pretext)).

Here, there is no dispute that Iorio promoted Gilbert to the Interim General Counsel position. Doc. 62, Def.'s Br. 11; Doc. 65, Pl.'s Resp. 3. And there is no dispute[9] that Iorio terminated Gilbert's employment. Doc. 62, Def.'s Br. 11; Doc. 65, Pl.'s Resp. 5; Doc. 68, Def.'s Reply 12.

---

[8] "The relevance of the fact that the employee was hired and fired by the same person within a relatively short time span comes in at the third [or pretext] stage of the [*McDonnell Douglas* burden shifting] analysis." *Garza v. Ranier L.L.C.*, No. A-12-cv-475-AWA, 2013 WL 3967786, at *6 (W.D. Tex. July 31, 2013) (quoting *Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991)).

[9] In Gilbert's Response, she claims that "[t]he actual decision-maker remains in dispute." Doc. 65, Pl.'s Resp. 9. Gilbert's assertion concerns the decision-maker connected to the April 2014 RIF, not her own termination. *Id.* Therefore, with regard to the same-actor inference, there is no dispute that Iorio both promoted and fired Gilbert.

Therefore the same actor inference applies. This inference, however, is rebuttable. *Spears*, 337 F. App'x at 422 (citing *Haun v. Ideal Indus., Inc.*, 81 F.3d 541, 546 (5th Cir. 1996)); *see also Jones*, 2017 WL 1049566, at *9 (finding that while the same actor inference indicated the employer lacked a discriminatory animus, the plaintiff presented evidence to rebut that inference).

Under the pretext theory, Gilbert must introduce evidence "'that permits the jury to believe that the [proffered] reason was false and that illegal discrimination was the actual reason.'" *King v. Life School*, No. 3:10-cv-0042-BH, 2011 WL 1562964, at *5 (N.D. Tex. Apr. 26, 2011) (quoting *Nichols v. Lewis Grocer*, 138 F.3d 563, 566 (5th Cir. 1998)). To carry her burden Gilbert "must rebut each nondiscriminatory or nonretaliatory reason articulated by [BBBSA]." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007); *see also Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 233 (5th Cir. 2015) ("An employee seeking to show pretext must rebut each discrete reason proffered by the employer.").

BBBSA's nondiscriminatory reason here has been laid out above: BBBSA was in a dire financial situation, so it eliminated Gilbert's position to retain *pro bono* counsel to fill the General Counsel role. Gilbert gives three reasons for why BBBSA's rationale was mere pretext: (1) BBBSA mischaracterizes the original purpose of the Interim General Counsel position; (2) if Gilbert's position was meant to be temporary, BBBSA failed to follow the appropriate Human Resources protocol for that interim assignment; and (3) BBBSA has changed its position on why it terminated Gilbert's employment. Doc. 65, Pl.'s Resp. 7–9. As BBBSA points out, Gilbert's Response could also be construed as putting forth statistical evidence to rebut BBBSA's financial reasons, so the Court will consider this as one of Gilbert's arguments as well.

Despite these contentions, Gilbert fails to rebut BBBSA's proffered nondiscriminatory

rationale by offering evidence sufficient for a reasonable jury to find that race played some role in her termination. *See King*, 2011 WL 1562964, at *5–6. The Court addresses each of Gilbert's arguments in turn.

### 1. BBBSA Mischaracterizes the Original Purpose of Interim General Counsel

Gilbert claims that BBBSA and Iorio mischaracterize the original purpose of the Interim General Counsel position. Doc. 65, Pl.'s Resp. 7. While Iorio maintains that she always intended to hire *pro bono* counsel and that she promoted Gilbert to assist her in finding new employment, Gilbert contends that she did not understand her position would be short-term or temporary or that it was designed to help her seek new employment. *Id.* As evidence, Gilbert points to her own Deposition and to her supervisor Olivia Eudaly's Declaration. *Id.*

In Eudaly's Declaration, Eudaly states that until April 2014, she was employed as BBBSA's Senior Vice President. Doc. 66, Pl.'s App., Eudaly Decl. ¶ 2. In that role, she supervised Gilbert. *Id.* ¶ 4. After Gilbert was promoted to General Counsel, as Eudaly labels the position, Eudaly states that she thought Gilbert was not promoted on a short-term basis, but that she would remain with BBBSA indefinitely. *Id.* ¶ 6. Based on Eudaly's communications with Gilbert and Iorio, she believed Gilbert would be given a full opportunity to serve as General Counsel. *Id.* Eudaly adds that she found Gilbert to be capable, competent, and experienced enough to assume the full-time permanent role of General Counsel. *Id.* ¶ 7.

Even though Eudaly believed that Gilbert could fill the role of General Counsel permanently, in Gilbert's Deposition, she states that Iorio told Gilbert that she intended to obtain *pro bono* General Counsel. Doc. 63, Def.'s App. 51, Gilbert Dep. Therefore, it appears that Gilbert did not understand

that her employment with regard to any position within BBBSA was temporary.[10] While not expressly clear, Gilbert appears to argue that her evidence concerning her own misunderstanding and Eudaly's misunderstanding demonstrates that Irorio did not originally envision Gilbert's time with BBBSA as temporary, and therefore, she must be asserting that now as a way to cover up a discriminatory animus. In BBBSA's Reply, it notes that Gilbert's arguments wholly fail to rebut BBBSA's proffered nondiscriminatory rationale. Doc. 68, Def.'s Reply 8.

Evidence that Gilbert and Eudaly misunderstood the purpose of the Interim General Counsel position does not rebut BBBSA's nondiscriminatory rationale. Gilbert's evidence may rebut Iorio's original intent for the position, but it does not rebut BBBSA's assertion that it terminated Gilbert, and the position of Interim General Counsel, to obtain *pro bono* counsel as a cost-saving option. Furthermore, it does not suggest that Iorio was ultimately driven by a discriminatory purpose. Even if Iorio had originally intended to transfer Gilbert to another position upon finding *pro bono* counsel, as Gilbert argues, this does not mean BBBSA's contention that it was driven by financial reasons is false. Indeed, completely terminating Gilbert as an employee rather than transferring her to another position supports BBBSA's contention that it was driven by financial reasons. Simply rebutting portions of a witness's testimony is not enough here; Gilbert needed to bring forth evidence that suggested that BBBSA was not driven by financial reasons and that illegal discrimination was the actual reason. *King*, 2011 WL 1562964, at *5. She did not. The Court therefore rejects Gilbert's first

---

[10] In Gilbert's Complaint, she states that Iorio determined that BBBSA needed a General Counsel in the Dallas, Texas area. Doc. 1, Pl.'s Compl. ¶ 18. Gilbert asserts that Iorio terminated her employment despite never inquiring about her willingness to relocate to Dallas, Texas or providing her an opportunity to apply or interview for the position she already held. *Id.* ¶ 19. Gilbert's argument in her Complaint also demonstrates that she understood she would not remain in the position of Interim General Counsel indefinitely. It does suggest she may have thought she could transition into the role of General Counsel, though.

argument.

### 2.    BBBSA Failed to Follow Human Resources Protocol

Alternatively, Gilbert argues that if the position was intended to be temporary, Iorio failed to follow the requirements of the Employment Handbook. Specifically, Gilbert alleges that Iorio failed to: (1) process Gilbert through Human Resources as a "temporary" or "casual" employee as is required by the Employee Handbook; and (2) provide a written job description for the position of Interim General Counsel. Doc. 65, Pl.'s Resp. 8. Gilbert reasons that because Iorio failed to process Gilbert as a temporary employee or provide her with a written job description, Iorio's Declaration "amounts to nothing more than a self-serving sworn statement not worthy of reliance by this Court." *Id.* at 8–9. Other than attacking the basis for Iorio's Declaration, Gilbert does not explain how her arguments regarding the Employment Handbook rebut BBBSA's nondiscriminatory rationale.

In its Reply, BBBSA first addresses Gilbert's analysis of the referenced Employment Handbook provisions. Doc. 68, Def.'s Reply 10.[11] BBBSA then argues that regardless of the applicability of the Employment Handbook, Gilbert fails to explain how failing to abide by each of the provisions demonstrates pretext for BBBSA's stated reason for terminating Gilbert's employment. *Id.* at 11.

The Court agrees with BBBSA. Boiled down, Gilbert's argument appears to be that because

---

[11] Specifically, the provision requiring BBBSA to process "temporary" or "casual" employees through Human Resources does not apply to Gilbert, according to BBBSA, because it is intended for "seasonal, fixed-term employees and contracted workers to ensure that BBBSA properly classifies the individual's employment status." Doc. 68, Def.'s Reply 11. Because Gilbert's status as a full-time employee did not change when she moved into the role of Interim General Counsel, BBBSA reasons, the provision does not apply to her. *Id.* As for the provision requiring a written description, BBBSA does not dispute the fact that a written description was not provided. *See id.* Instead, it argues that Gilbert was placed in the role of Interim General Counsel during a time of considerable restructuring and transition within the organization and creating a job description for a temporary position slated for elimination was not among BBBSA's top priorities. *Id.*

Iorio failed to follow the provisions in the Handbook, she must have lied about the position being temporary, and because she lied about the position being temporary, her entire Declaration cannot be relied on. To the extent that Gilbert is requesting the Court to strike Iorio's Declaration, the Court declines to do so. Gilbert fails to make any evidentiary argument for why it should be stricken and simply calls into question the credibility of Iorio's testimony with evidence of Handbook violations. The Court does not make credibility determinations at the summary judgment stage. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Therefore, ignoring or striking Iorio's Declaration based on Gilbert's allegation that it is not credible would be inappropriate. Furthermore, Gilbert's argument is completely unrelated to BBBSA's nondiscriminatory rationale. Gilbert fails to connect alleged Employment Handbook violations to BBBSA's allegation that Gilbert's employment was terminated due to financial reasons.

Without determining whether BBBSA did, in fact, violate provisions of its Employment Handbook, the Court finds that Gilbert's use of the Employment Handbook as evidence does not rebut BBBSA's nondiscriminatory rationale. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 346 (5th Cir. 2007) (finding that absent evidence of disparate treatment, an employer's failure to follow its own internal policy is not probative of discriminatory animus because employees are not protected from arbitrary employment practices, only discriminatory ones). Here, Gilbert failed to offer sufficient credible evidence to show that BBBSA applied its policies selectively or to otherwise rebut BBBSA's proffered nondiscriminatory rationale for its decision to fire her. The Court therefore rejects Gilbert's second argument.

### 3. BBBSA's Changing Position Indicates Discriminatory Purpose

Gilbert asserts that because BBBSA has allegedly changed its theory of why it terminated

Gilbert, BBBSA must be covering up for racially discriminatory purpose. Doc. 65, Pl.'s Resp. 9. Gilbert begins her argument by first considering and refuting what she deems the original theory—that BBBSA terminated Gilbert due to poor performance. *See id.* at 7. Even thought BBBSA did not make this argument in bringing forth evidence of a nondiscriminatory rationale, Gilbert nonetheless brings forth evidence to rebut it.

For example, Gilbert cites to Iorio's Deposition to argue that Iorio had no recollection of ever viewing Gilbert's resume, never gave Gilbert complex legal matters in order to assess her legal abilities or expertise, and never consulted with Gilbert's supervisor, Eudaly, about Gilbert's capabilities. *Id* at 7–8.

Gilbert then argues that because BBBSA allegedly changed its position on why it terminated her from her inexperience to financial reasons, Gilbert has sufficiently established inconsistencies in BBBSA's proffered nondiscriminatory rationale. Doc. 65, Pl.'s Resp. 9. It is important to note that Iorio's discussion of Gilbert's inexperience is in Iorio's Deposition and not in any pleading. *See id.* at 7. Nonetheless, Gilbert reasons that Iorio's deposition testimony established BBBSA's original theory, and now giving a different rationale in its Motion for Summary Judgment demonstrates that BBBSA's rationale is false and the only likely alternative explanation is that Gilbert was terminated because of her race. *Id.* Gilbert concludes that the Court should find that Iorio came to BBBSA with a preconceived notion about Gilbert stemming from her race. *Id.*

In its Reply, BBBSA first argues that Gilbert's statements about Iorio failing to consider her resume, to give her complex legal matters, or to consult with her supervisor are unconvincing. Doc. 68, Def.'s Reply 9. This is because Iorio provided Gilbert with the opportunity to serve in the Interim General Counsel position, and therefore had an opportunity to observe Gilbert's skills without having

to rely on her resume or consulting with Eudaly. *Id.*

BBBSA then rejects Gilbert's contention that BBBSA's original reason for firing Gilbert was due to her poor performance. *See id.* at 8–9. BBBSA argues that Gilbert's inexperience was neither the sole nor primary reason that it terminated Gilbert's employment. *Id.* at 9. BBBSA cites to the deposition testimony on which Gilbert relies and argues that Iorio never stated that she fired Gilbert because of her inexperience. *Id.* The following testimony is what Gilbert relies on to argue that Iorio's original reason for firing her was her inexperience:

> Q:    Do you recall if you ever asked Ms. Gilbert or any other person about things that she had handled that perhaps would have given her a level of competence to address other issues?
>
> A:    I talked to Olivia. Olivia said she thought she would be a good general counsel. I talked to Mark Alexander, the CFO. He said, "I don't think you're going to be pleased with her work product."
>
> Q:    Did he tell you why?
>
> A:    He said that she doesn't she [sic] produce a good product.
>
> . . .
>
> Q:    But you decided to make her the interim GC despite that information from –
>
> A:    I had already made her the interim GC. And then after I had made that decision, Mark Alexander said I don't think you're going to be happy with her work product.
>
> Q:    Was he correct?
>
> A:    Ultimately I – I was not happy with her work product. She did not appear to have extensive background as an attorney and was not someone who I could really rely upon.

Doc. 66, Pl.'s App., Iorio Dep. 21. In its Reply, BBBSA argues that the deposition testimony on

which Gilbert refers demonstrates only that Iorio was not pleased with Gilbert's work product when asked; it does not indicate that Iorio fired Gilbert for that reason. Doc. 68, Def.'s Reply 10.

Gilbert also cites to *Reeves* for the proposition that the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose, and that once the employer's justification has been eliminated, discrimination may well be the most likely alternative. Doc. 65, Pl.'s Resp. 9 (citing *Reeves*, 530 U.S. at 147). Gilbert appears to use this proposition to argue that by putting forth an additional nondiscriminatory reason BBBSA fired her, she eliminated the financial reason. This is not the case. If she had brought forth evidence that eliminated BBBSA's financial reason as a possibility, then discrimination might have been an alternative. But she did not.

Because BBBSA did not assert that it fired Gilbert for inexperience, any evidence to the contrary is irrelevant for purposes of determining whether Gilbert met her burden. Regarding Gilbert's assertion that BBBSA changed its theory, it is not clear that this is the case. It appears to the Court that BBBSA never asserted that Gilbert's inexperience was the *reason* for terminating her employment. Iorio may have felt that she was inexperienced, but it appears from the record that BBBSA has maintained its assertion that financial reasons drove its decision. Furthermore, even if Iorio had considered Gilbert's inexperience as well, this fact, alone, does not rebut the proffered financial reason. Even if Gilbert is right in thinking that her alleged inexperience went into Iorio's decision along with financial factors, she still failed to rebut *each and every* nondiscriminatory reason that is required because she does not rebut BBBSA's financial reason. *See McCoy*, 491 F.3d at 557.

To meet her burden here, Gilbert is required to bring forth evidence to rebut each of BBBSA's nondiscriminatory reasons for termination. Therefore she needed to bring forth evidence

that suggested that BBBSA was not driven by financial reasons and that illegal discrimination was the actual reason. *King*, 2011 WL 1562964, at *5. Gilbert's evidence that Iorio did not adequately assess her experience or that BBBSA may or may not have had a different theory does not meet this burden and therefore the Court rejects her third argument.

> 4. Statistics

As BBBSA points out in its Reply, Gilbert's Response could be construed as an attempt to introduce statistical evidence of who was fired during the RIF to support her argument of pretext. Doc. 68, Def.'s Reply 11. Gilbert states that of 45 national employees, 14 minority employees were terminated and 7 Caucasian employees were. Doc. 65, Pl.'s Resp. 6. Gilbert concludes that after the cutbacks, an office that was once half minority employees dropped to about a third. *Id.* Gilbert cites to her own Complaint and Deposition to support her numbers. *See id.*

BBBSA argues that the use of this evidence is flawed because it: (1) is based on incorrect data; (2) compares minority employees and Caucasians, rather than focusing on African Americans; and (3) is irrelevant to this case because Gilbert was not impacted by the RIF. Doc. 68, Def.'s Reply 11–12. As discussed above, the Court questions Gilbert's statistical evidence. First, it is undisputed that Gilbert was not a part of the RIF. Her termination was individual and separate. So evidence of who was fired during the RIF does not seem relevant to Gilbert's case. Furthermore, it is unclear that Gilbert's evidence is accurate because BBBSA's competing statistics demonstrate that minority employees fared better in the RIF than Caucasian employees. And "[r]aw statistics are rarely probative of anything. To be meaningful, further refinement (if not always expert analysis) is required." *Conlay v. Baylor Coll. of Med.*, 688 F. Supp. 2d 586, 595 (S.D. Tex. 2010). Finally, while statistical evidence "'may be probative of pretext in limited circumstances,' it 'usually cannot rebut

the employer's articulated nondiscriminatory reasons.'" *Scott v. Univ. of Miss.*, 148 F.3d 493, 510 (5th Cir. 1998). Thus, without making a credibility determination as to whether Gilbert's statistical evidence should be believed, the Court finds that Gilbert's statistical evidence would not permit a jury to believe that BBBSA's proffered reason was false and that illegal discrimination was the actual reason. *King*, 2011 WL 1562964, at *5. Therefore, the Court rejects Gilbert's statistical argument.

At bottom, it seems that Gilbert believed that her promotion to Interim General Counsel was not temporary, but rather an indication that she would either continue permanently as General Counsel or be transferred to another position within BBBSA once Iorio filled the position with *pro bono* counsel. Because of Iorio's actions to the contrary, Gilbert seems to believe that the only explanation for her firing is because of her race. But BBBSA offered evidence to support its nondiscriminatory reason for firing Gilbert. And Gilbert failed to provide sufficient proof to rebut BBBSA's proffered rationale.[12] For that reason, the Court **GRANTS** BBBSA's Motion for Summary Judgment on Gilbert's race discrimination claim under 42 U.S.C. § 1981. *See McCoy*, 492 F.3d at 557.

## IV.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** BBBSA's Motion for Summary Judgment in its entirety. And so the Court **DISMISSES with prejudice** Gilbert's suit. Final Judgment will follow this Order.

---

[12] The Court need not consider the impact of the "same actor inference" because even it did not apply—and there was no presumption that BBBSA's actions were free from animus—Gilbert would have still failed to rebut BBBSA's nondiscriminatory rationale.

SO ORDERED.

SIGNED: June 16, 2017.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE